IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Cr. No. 15-02028 WJ |
| | ) | |
| vs. | ) | |
| | ) | |
| **LAWRENCE ROYBAL**, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' MOTION FOR UPWARD DEPARTURE
AND SENTENCING MEMORANDUM**

The United States of America, through its undersigned counsel, hereby files its motion for upward departure and sentencing memorandum in this case.

**I.  PROCEDURAL BACKGROUND**

On June 9, 2015, a federal grand jury returned a one-count indictment charging the Defendant with Assaulting, Resisting, or Impeding a Federal Officer with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 111(a) and (b). Doc. 11. On September 3, 2015, the Defendant pleaded guilty to the indictment without the benefit of a plea agreement. Doc. 21. The Presentence Report (PSR) was disclosed on November 19, 2015. The PSR calculated the base offense level as 14. PSR ¶ 16. The PSR included a four-level enhancement for the use of a dangerous weapon: a pitchfork (PSR ¶ 17); a two-level enhancement for his conviction under 18 U.S.C. § 111(b) (PSR ¶ 18); and, a six-level enhancement because the Defendant created a substantial risk of serious bodily injury, knowing or having reasonable cause to believe that Officer John Doe was a law enforcement officer (PSR ¶ 19). The adjusted offense level is 26. PSR ¶ 22. The Defendant received a three-level reduction for acceptance of responsibility,

resulting in total offense level of 23. PSR ¶¶ 24-26. The Defendant's criminal history score was calculated at three, resulting in a criminal history category of II. PSR ¶¶ 37 and 38.

## II. FACTS

The incident between the Defendant and the victim, Officer John Doe, occurred on May 11, 2015, in Dulce, New Mexico, which is within the exterior boundaries of the Jicarilla Apache Indian Reservation. PSR ¶ 6. The Defendant is an enrolled member of the Jicarilla Apache Nation. On May 11, 2015, Jicarilla Apache Police Department (JAPD) officers were dispatched to the Defendant's home in Dulce, New Mexico, to perform a welfare check on the Defendant. *Id*. The first JAPD officer who arrived on scene met outside the residence with the Defendant's sister, Ms. D.H., and the Defendant's mother, Ms. G.R. *Id*. Ms. D.H. indicated that "she was concerned that the [D]efendant was intoxicated and he was not to be in the house when he was intoxicated because her disabled brother lived in the home." *Id*.

The officer approached the residence, announced his presence, and asked the Defendant to open the door to perform a welfare check. PSR ¶ 7. The Defendant did not answer. *Id*. Ms. G.R. called him, and the Defendant yelled and told the officer to go away. *Id*. Then, "[a]fter repeated requests for the [D]efendant to come out of the residence, he appeared at the door with a pitchfork in his hands." *Id*. The Defendant used the pitchfork to jab the officer, and he also threatened the officer that he was going to throw the pitchfork at him. *Id*. The Defendant yelled at the officer to shoot him and pointed at his chest, "stating he did not want to live anymore." *Id*.

A Jicarilla Apache Game and Fish (JAGF) officer arrived on scene. PSR ¶ 8. He approached the front door "to try to calm down the [D]efendant and instructed him to put down the pitchfork." *Id*. "The [D]efendant refused to calm down and threatened [him] with the

pitchfork." *Id*. The Defendant stated that he was "tired of living" and he wanted the "Officer to shoot [at him,] but he won't." *Id*.

A third officer arrived on scene. PSR ¶ 9. Officer John Doe ordered the Defendant to drop the pitchfork. *Id*. Officer John Doe "drew his Taser and told the Defendant he was going to be "tased" if he did not drop the pitchfork." *Id*. The Defendant "charged at Doe and Doe deployed the [T]aser with negative effect." *Id*. "The pitchfork made contact with [Officer John] Doe's left forearm, tearing through his shirt." *Id*. Officer John Doe "grabbed the pitchfork with his left hand, and deployed his [T]aser again making contact with the Defendant's left anterior shoulder." *Id*. "The pitchfork pierced the left sleeve of [Officer John] Doe's uniform shirt, leaving a red mark and small abrasion on [Officer John] Doe's arm." *Id*. Then, "all officers rushed the Defendant and took him to the ground, restrained him, placing him under arrest." *Id*.

### III.     ARGUMENT

#### A. Upward Departure Based Upon Underrepresentation of Criminal History

Defendant's criminal history supports an upward departure from a criminal history category of II to a criminal history category of III. Under the United States Sentencing Guidelines, district courts may depart upward when "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." USSG § 4A1.3(a)(1). In addition, evidence of "[p]rior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses)"; and "[p]rior similar adult criminal conduct not resulting in a criminal conviction" may provide information indicating that a defendant's criminal history is underrepresented. USSG § 4A1.3(a)(2). The Tenth Circuit follows a four-part test to determine the propriety of a departure. *See United States v. Robertson*,

3

568 F.3d 1203, 1211 (10th Cir. 2009). This four-part test "inquires (1) whether the district court relied on permissible departure factors, (2) whether those factors removed a defendant from the applicable Guidelines heartland, (3) whether the record supports the district court's factual bases for a departure, and (4) whether the degree of departure is reasonable." (citation omitted) *Id.*

In this case, the Defendant has an extensive tribal criminal history. His tribal criminal history shows that he has been charged with offenses similar to the instant offense on multiple occasions, all of which involved alcohol and violence. For instance, the Defendant has been charged with Assault and Battery on a Tribal Officer on 11 occasions, Resisting Lawful Arrest on 12 occasions, Disorderly Conduct on 36 occasions, Assault and Battery on 17 occasions and Intoxication on 82 occasions. PSR ¶ 39. In addition, he has been charged of other offenses on 29 occasions, for a total of approximately 187 charges since 1980.

According to the Defendant's criminal history, since January 2006, he has been convicted 14 times in tribal court for offenses such as Disorderly Conduct, Intoxication, Driving under the Influence of Intoxicants, Resisting Lawful Arrest, Assault and Battery, Assault and Battery on a Tribal Officer, Contempt of Court, Disturbing the Peace and Assault. For instance, on January 19, 2006, the Defendant pleaded guilty to Disorderly Conduct and was sentenced to pay a $100.00 fine on the Jicarilla Apache Tribal Court. The following facts were taken from the Defendant's February 11, 2010, PSR (hereinafter 2010 PSR).[1] In this case, police reports show that:

> [O]n January 17, 2006, officers were dispatched to a call in reference to a fight. Officers met with the victim, [L.H.], who had a laceration to his right forearm and was bleeding. [L.H.] stated he and the defendant, Lawrence Roybal, had been involved in a fight and the defendant cut him with a knife. Officers arrived at the defendant's home. A witness advised he observed the victim arrive[] at the defendant's home and the two began to argue. He observed the defendant chase the victim around with a knife. The defendant stated to the witness he wanted to be killed by

---

[1] The February 11, 2010, PSR was prepared for case number 09-CR-01758-001 JH in which the Defendant was convicted of a Crime in Indian Country, that is Assault with a Dangerous Weapon in violation of 18 U.S.C. §§ 1153 and 113(a)(3).

4

officers. The defendant was transported to [a] Dulce health clinic. The defendant was also charged with Assault and Battery[,] which was dismissed.

2010 PSR ¶ 141.

On March 29, 2007, the Defendant was found guilty of Disorderly Conduct and Resisting Lawful Arrest and sentenced to 12 days of imprisonment by the Jicarilla Apache Tribal Court. In this case, police reports indicated:

> [O]n March 20, 2007, officers received a call in reference to the defendant, Lawrence Roybal, consuming alcohol while on adult welfare status. Officers arrived at the residence and the defendant provided court documents indicating he had been off adult welfare since January 8, 2008 (sic). Officers left and were informed the defendant was on probation and was not to consume alcohol. They returned to the defendant's home and observed the defendant outside of his home holding a hydraulic jack and standing in a threatening position. The defendant made sudden movements towards the officer and the officer sprayed him with pepper spray in the face. The defendant continued to be combative with the officer. He was arrested and transported to the jail.

2010 PSR ¶ 147.

On August 23, 2007, the Jicarilla Apache Tribal Court sentenced the Defendant to 46 days of imprisonment for Influence of Intoxicating Liquor and Resisting Lawful Arrest. According to the Defendant's current PSR, police reports show that:

> [O]n July 31, 2007, officers observed a vehicle traveling erratically, slowing down and swerving all over the roadway, almost hitting other vehicles. A traffic stop was initiated; however, the driver of the vehicle later identified as the defendant, Lawrence Roybal, would not stop the vehicle. The vehicle finally stopped and hit a concrete curb, nearly going through a fence. The defendant exited the vehicle and proceeded to run. After a physical struggle with officers, the defendant was sprayed with OC in the face. He was then arrested. The defendant was also charged with Reckless Driving, Driver Must be Licensed, Unlawful to Drive While License Suspended or Revoked, and Assault and Battery on a Tribal Official, and Disorderly Conduct.

PSR ¶ 30.

On April 7, 2009, the Jicarilla Apache Tribal Court sentenced the Defendant to 18 days of imprisonment for Assault. In this case, the PSR indicates that:

> [O]n April 5, 2009, officers responded to a call at the Jicarilla Apache Department of Corrections. Upon arrival, contact was made with a corrections officer who advised, as he was issuing inmate bed gear when an inmate, identified as the defendant, Lawrence Roybal, became upset due to not receiving a second blanket. The defendant tried to hit the corrections officer and struggled as

5

officers attempted to restrain him. The defendant was also charged with Disorderly Conduct[,] which was dismissed at the time of his plea hearing.

PSR ¶ 35. The Defendant's tribal criminal history shows past conduct similar to the instant offense. Furthermore, his actions show a pattern of conduct, no respect for the law and likelihood of recidivism.

The United States submits that the Defendant's criminal conduct is under-represented by his criminal history category. The Defendant's criminal history supports an upward departure based on USSG § 4A1.3(a)(1). A criminal history category of III is consistent with an individual with a similar record as the Defendant. Thus, the United States requests the Court consider treating this Defendant as a criminal history category III, rather than a criminal history category II, for the purposes of sentencing. Currently, at a criminal history category of II and an offense level of 23, the Defendant's advisory sentencing guideline range is 51 to 63 months. *See* PSR ¶ 78. At a criminal history category of III, with an offense level of 23, the advisory sentencing guideline range would be 57 to 71 months. PSR ¶ 93.

    B. **Application of Sentencing Guidelines and Factors Considered Pursuant to 18 U.S.C. § 3553(a)**

The U.S. Sentencing Guidelines are advisory. *See United States v. Booker*, 543 U.S. 220, 234 (2005). Moreover, under the Supreme Court ruling in *United States v. Rita*, 551 U.S. 338 (2007), for appellate purposes, a reviewing court may accord a properly calculated sentence to have a presumption of reasonableness, *e.g.*, *Id*. at 347. A district court, on the other hand, cannot presume reasonableness, but in determining a sentence, it must conduct an analysis using both the Guidelines and the sentencing statutes. Both the sentencing judge and the (Sentencing) Commission "are carrying out the same basic § 3553(a) objectives, the one, at retail, and the other at wholesale." *Id*. at 345. The Guidelines can assumed to be a "rough approximation" of a

sentence that would "achieve § 3553(a)'s objectives." *Id*. at 347-349. Hence, the district court should impose sentences within the calculated guideline range when a departure is not appropriate because Guidelines sentences prevent unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) and because the Sentencing Commission policies articulated in the Guidelines are sound and reasoned.

The factors listed in 18 U.S.C. § 3553(a) include, "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1) and (2)(A)-(D). "Preceding this list is a general directive to 'impose a sentence sufficient, but not greater than necessary to comply with the purposes of sentence described in the second factor. § 3553(a) (2000 ed., Supp. V)." *Gall v. United States*, 128 S.Ct. 586, 597 (2007).

1. **Nature and Circumstances of the Offense, and History and Characteristics of the Defendant**

In the instant case, the Defendant was charged with assaulting, resisting, and impeding a Federal officer with a deadly or dangerous weapon. The Defendant pleaded guilty to the indictment without the benefit of plea agreement. This is his second Federal conviction for a similar offense. In addition, the Defendant has an extensive tribal criminal history that includes offenses similar to the instant offense. Although the Defendant has suffered multiple psychiatric problems, the PSR accurately reflects that he has a propensity for violence. PSR ¶ 94. Thus, the Defendant poses a danger to the community and to himself. *Id*.

The United States requests this Court sentence the Defendant to a term of imprisonment that reflects the nature and circumstances of the offense and the Defendant's likelihood of recidivism based upon his past conduct. The Defendant's actions show a violent behavior, an alcohol problem and a pattern of conduct. Based on the nature and circumstances of the offense and the Defendant's history and characteristics, a sentence at the high end of the Defendant's guideline range is warranted.

### 2. The Need for the Sentence Imposed

The United States requests the Court consider a sentence at the high end of the Defendant's guideline range. Given the nature and circumstances of the offense, and the history and characteristics of the Defendant, the United States submits that a sentence at the high end of his guideline range considers the criminality of the Defendant's conduct and promotes respect for the law. This request provides just punishment for the offense, affords adequate deterrence to criminal conduct, protects the public from further crimes of the Defendant, and provides the Defendant with needed correctional treatment in the most effective manner.

This is not the first time the Defendant has assaulted a law enforcement officer. As mentioned above, the Defendant has encountered law enforcement officers most of his life and his criminal history shows numerous assaults to law enforcement officers. Indeed, his actions show no respect for the law. Thus, a sentence at the high end of the Defendant's guideline range is an appropriate sentence for the Defendant. When his actions are compared with an individual with a similar record, who has been found guilty of similar conduct, it is reasonable to determine that a sentence at the high end of the Defendant's guideline range is appropriate. Therefore, there would be no unwarranted sentence disparity.

## IV.     CONCLUSION

WHEREFORE the United States requests the Defendant be treated as a criminal history category of III, and this Court sentence the Defendant to a term of imprisonment at the high end of the guideline imprisonment range for a person with an offense level of 23 and a criminal history category of III.  A sentence of 71 months is sufficient, but not greater than necessary, to accomplish the sentencing objectives set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

*<u>Electronically filed 12/03/2015</u>*
RAQUEL RUIZ-VELEZ
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico  87103
(505) 346-7274
(505) 346-7296 fax

I HEREBY CERTIFY that on the 3rd
day of December, 2015, I filed the foregoing
pleading electronically through the CM/ECF
system, which caused counsel of record
to be served by electronic means on this date.

*/s/*_____
Raquel Ruiz-Velez
Assistant U.S. Attorney