# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                        CR NO. 15-02028 WJ

LAWRENCE ROYBAL,

    Defendant.

## DEFENDANT'S MOTION FOR DOWNWARD VARIANCE AND SENTENCING MEMORANDUM

**COMES NOW** Defendant Lawrence Roybal, by and through his undersigned counsel, Martin Lopez III, P. C. (Martin Lopez, III), and moves that the Court deviate from the advisory sentencing guidelines herein. In consideration for all of the statutory factors, and the "over-arching" (*Kimbrough v. United States*, 126 S. Ct. 558, 574-75 (2007)) requirement that the sentence be sufficient, but not greater than necessary, to accomplish the statutorily defined goals of sentencing, a deviation is appropriate in this case.

(1) As more fully explained in the accompanying sentencing memorandum and as applied to the facts of this case, the applicable sentencing guideline §2A2.2 is devoid of any reliance on empirical data or the review process characteristic of the sentencing commission's institutional role. *Kimbrough v. United States*, 126 S. Ct. 558, 575 (2007). As a result, when this guideline is applied to the facts of this case, the court should exercise its discretion and reject, after due consideration and authority, the resulting advisory sentencing range. *Kimbrough*, 126 S. Ct. at 558; *Spears v. United States*, 129 S. Ct. 840 (2009). requests this Court pursuant to *United States v. Booker*, 125 S.Ct. 738 (2005) and 18 U.S.C. 3553(a) to grant him a reasonable sentence.

(2) As more fully explained in the accompanying sentencing memorandum, there are marked disparities between Native Americans prosecuted in federal court for aggravated assault

versus aggravated assault defendants in New Mexico state court. The Court should take such disparity into account, along with the history of §2A2.2, and recognize that a deviation is appropriate in this case.

(3) As more fully explained in the accompanying sentencing memorandum, application of 18 U.S.C. §3553(a) to all of the facts and circumstances of this case supports a deviation from the advisory guideline range.

As grounds, Defendant submits this Sentencing Memorandum requesting a reasonable sentence, pursuant to Fed. R. Crim. P. 32 (c), 18 U. S. C. Section 3553 (a), <u>United States v. Booker</u>, 543 U.S. 220 (2005) and United States Sentencing Commission Sections 5C1.1 and 5D1.1.

**I. INTRODUCTION**

Mr. Roybal awaits sentencing following entry of a guilty plea to the Indictment. (Doc. 21). He files a motion for deviation from the advisory guideline range and submits this memorandum in support of such motion. The Court should deviate from the advisory guidelines for at least three reasons: (1) the arbitrary history of the aggravated assault guideline; (2) the disparity between state and federal sentencing for Native American aggravated assault defendants; and (3) the extraordinary history and characteristics of Mr. Roybal and unusual circumstances of the offense.

The Presentence Investigation Report (PSR) assigns a total and adjusted offense level of 23 pursuant to U.S.S.G. §2A2.2. *See* PSR at ¶¶ 14-21. However, these offense levels come not from the characteristic institutional role of the United States Sentencing Commission, but rather from amendments responsive only to statutory enactments. *See,* <u>United States v. Rita</u>, 127 S. Ct. 2456, 2464-65 (2007) (recognizing potential appropriateness of deviation in cases where applicable guideline is not the product of the sentencing commission's characteristic institutional role and processes). The originally assigned offense level for aggravated assault was 14. The jump to offense level 26 was expressly due to statutory law, not empirical data or the

commission's characteristic review process. Under these circumstances, the Court should follow the rationale of *Rita* and deviate from this arbitrary guideline.

In addition to the arbitrary amendment history of §2A2.2, the applicable guidelines are also part of a federal sentencing system that engenders a disparity for Native American defendants relative to state court prosecutions. *See*, Timothy J. Droske, Correcting Native American Sentencing Disparity Post-Booker, 93 Marq. L. Rev. 723 (2008). This identified national-wide disparity holds true in New Mexico. As explained further herein, a review of data for assault cases shows a distinct disparity between state and federal assault cases, both in sentences imposed and time actually served.

The fact is that the arbitrary amended guideline results in arbitrarily different sentencing outcomes for Native American defendants in federal court. Although the PSR correctly states the applicable sentencing guidelines for this case, the Court should deviate.

## II. THE COURT'S DEVIATION AUTHORITY

It is now black letter law that the Sentencing Guidelines are advisory. *United States v. Booker*, 543 U.S. 220 (2005). As a result, the range of discretion in sentencing dictated by the facts of each individual case has been significantly broadened. *Gall v. United States*, 552 U.S. 38, 59 (2007) (finding a sentence outside the Guidelines to be reasonable). The significantly broadened range of discretion allows a district court to vary from the advisory guideline range based solely on policy considerations, including disagreements with the guidelines. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *Rita v. United States*, 551 U.S. 338, 349-50 (2007); *Cunningham v. California*, 549 U.S. 270, 286-87 (2007).

Although the sentencing guidelines remain "the starting point in the initial benchmark, in determining a sentence, the district court "may not presume that the guideline's range is reasonable" but must "make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 59. Therefore, district courts must give respectful consideration to the guidelines, but are permitted to tailor the sentence in light of other statutory concerns. *Kimbrough*, 552 U.S. at

101 (quoting *Booker* 543 U.S. at 245-246). The district court is free to make its own reasonable application of the § 3553(a) factors and to reject after due consideration, the advice of the guidelines. *Id.*; *Spears v. United States*, 129 S. Ct. 840 (2009).

Whether a judge may draw any useful guidance from a particular guideline depends first on whether the Sentencing Commission, in promulgating or amending it, acted in "the exercise of its characteristic institutional role." *Kimbrough*, 128 S. Ct. at 575. As described in *Rita*, the exercise of this role has two basic components: (1) reliance on empirical evidence of pre-guideline sentencing practice and (2) review and revision in light of judicial decisions, sentencing data, and comments from participants and experts in the field. *Rita*, 127 S. Ct. at 2464-65. If the Commission did not rely on past practice, or did not review and revise the guideline in response to data and feedback from judges and others in the field, it is not "fair to assume" that the guideline "reflects a rough approximation" of sentences that "might achieve § 3553(a) objectives." *Rita*, 127 S. Ct. at 2464-65. When the guideline is not based on "empirical data and national experience," it "does not exemplify the Commission's exercise of its characteristic institution" and it is not an abuse of discretion to conclude that it yields a sentence that is greater than necessary, even in a "mind run" case. *Kimbrough*, 128 S. Ct. at 575. Such is the case here with the aggravated assault guideline.

In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a).[1] *Nelson v. United States*, 129 S. Ct. 890, 891-92

---

[1]Those factors are:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-
  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment or the offense;
  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant; and
  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the advisory guideline range;

(2009) (per curiam). That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)). Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, they are not the only consideration. *Gall*, 552 U.S. at 49. The district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Id.* at 50; *Nelson*, 129 S. Ct. at 892 ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be *presumed* reasonable.") (emphasis in original). The sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, explaining any variance from the former with reference to the latter. *Nelson*, 129 S. Ct. at 891-92.

The Supreme Court rejects the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall*, 552 U.S. at 49. The court is free to consider "whether the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Rita*, 551 U.S. at 351 (citations omitted).

The court can consider whether the guideline at issue exemplifies the Sentencing

---

(5) any pertinent policy statements issued by the Sentencing Commission;
(6) the need to avoid unwarranted sentence disparities; and
(7) the need to provide restitution to any victims of the offense.

**18 U.S.C. § 3553(a).**

Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards."  *Kimbrough*, 552 U.S. 552 U.S. at 108-09 (noting that when operating within that institutional role the Sentencing Commission "has the capacity courts lack" and can base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise); *Rita*, 561 U.S. at 349-50.  In formulating the Guidelines, the Commission developed and used data on past practices and recidivism.  *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform 72-73* (November 2004) ("Fifteen-Year Assessment"), available at http://www.usssc.gov/ sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/15-year-study/15_year-study_full.pdf; U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough*, 552 U.S. at 96; *Gall*, 552 U.S. at 46 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").  Based on these sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range.  Fifteen-Year Assessment at 14.  Accordingly, in many cases, the Guidelines represent a reasonable estimation of a fair sentencing range.  *See, Kimbrough*, 552 U.S. at 109.

When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita*, 551 U.S. at 350); *see also Gall*, 552 U.S. at 46 n.2 (noting that not all Guidelines are tied to empirical evidence).  Consequently, the Guidelines that are not based on empirical evidence are a less reliable appraisal of a fair sentence.  *See Kimbrough*, 552 U.S. at 109-110.  In such cases, it is

6

"not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." Kimbrough, 552 U.S. at 110; *see also* Spears v. United States, 129 S. Ct. 840, 843 (2009) (per curiam) (clarifying that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines"); United States v. O'Connor, 567 F. 3d 395, 398, n. 4 (8th Cir. 2009) (assuming without deciding that Kimbrough's holding extends beyond the crack-cocaine Guidelines).

Both for policy reasons and because Congress had enacted mandatory minimum sentences, the Commission departed from past practices in setting offense levels for white collar crimes, child abuse crimes, sexual offenses and violent crimes. Fifteen-Year Assessment at 15, 47, 68-71. The Commission, "either on its own initiative or in response to Congressional actions, established guideline ranges that were significantly more severe that past practice" for violent crimes and sex offenses. Fifteen-Year Assessment at 47 (noting that Guidelines ranges were set above historical levels for violent crimes including aggravated assault); ("Fifteen years later, it can be confirmed that the policy changes initiated by Congress and the Commission substantially increased sentence severity for virtually all of the targeted offenses").

The Guidelines that establish the base offense levels for aggravated assault were not based on empirical data and national experience but driven by Congressional directive. *See*, Fifteen-Year Assessment at 47.

By virtue of the special federal jurisdiction over Native American lands and violent crimes by or against Native Americans that occur on Indian land, Native Americans are subject to federal prosecution for many offenses that are prosecuted in the state courts when committed by other groups. *See*, Working Group Report on Drugs and Violent Crimes, Firearms, and Gang-Related Activity (1992) ("The federal government does not have jurisdiction over the majority of the violent crimes committed in the United States. Federal jurisdiction is limited to the special

maritime and territorial jurisdiction of the United States, to acts against certain specified persons, such as the President, members of Congress, or internationally protected persons, or to classes of act that have an impact on interstate commerce"); Fifteen-Year Assessment at 114.

The Sentencing Commission expressly voiced concerns that "Native American defendants are treated more harshly by the federal sentencing system than if they were prosecuted in their respective states" and convened the Native American Advisory Group to address issues of Native American sentencing. *See*, Lawrence L. Piersol, *et al*., *Report of the Ad Hoc Advisory Group on Native American Sentencing Issues* 21 n. 37 (Nov. 4, 2003) (Native Amer. Adv. Group Rep't),  The Sentecing Commission's Advisory Group found that the jurisdictional framework "places more Native American offenders in federal court, and, when coupled with the longer federal sentences, it results in a disparate impact on Native Americans." Native Amer. Adv. Gropu Rep't at 28-29. The majority of defendants sentenced in federal courts for aggravated assault crimes, are Native Americans. Fifteen-Year Assessment at 95; Native Amer. Adv. Group Rep't at p. 33 (noting: "When one considers the data from New Mexico, the disparity between state and federal sentences for assault is even more dramatic. The average sentence received by an Indian person convicted of assault in New Mexico state court is six months. The average for an Indian convicted of assault in federal court in New Mexico is 54 months. . . The six month versus 54 month difference covers a number of offense levels (15), and thus easily it meets the prima facie disparity test").

The Advisory Group also reported that"[d]ata on all offenses reviewed by the Advisory Group confirms the devastating role that alcohol plays in reservation crime." *Id.* at iv. Even pre-*Booker*, federal courts, including the Eighth Circuit Court of Appeals, recognized the unique sentencing considerations that are present in the prosecutions of Native Americans arising under the Major Crimes Act. Fifteen Year Assessment at 16; *see, e.g., United States v. Decora*, 177 F. 3d 676, 679 (8th Cir. 1999) (upholding a downward departure to probation for a Native American defendant convicted of assault with a dangerous weapon because of the adversity the defendant

faced on the reservation); *United States v. One Star*, 9 F.3d 60, 61 (8th Cir. 1993) (upholding a downward departure for a defendant convicted of assault with a dangerous weapon because of the "unusual mitigating circumstances" of reservation life; *United States v. Big Crow*, 898 F. 2d 1326 1332-33 (8th Cir. 1990) (holding that the adverse environment of reservation life can be considered as a mitigating circumstance justifying a downward departure under the Guidelines.).

Sentencing courts must consider "the history and characteristics of the defendant" as one of the § 3553(a) factors. *See*, <u>Rita</u>, 551 U.S. at 365 (Stevens, J., concurring). Although "[m]atters such as age, education, mental or emotional conditions, medical condition, (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines," they are matters that § 3553(a) authorizes the sentencing judge to consider." *Id.* (citations omitted).

### III. APPLICATION OF §3553(a) TO LAWRENCE ROYBAL

As applied to the facts of this case, the aggravated assault guideline was arbitrarily set in the beginning and has been arbitrarily amended since. The current sentencing ranges are unsupportable under the sentencing commission's proper institutional role. The federal guideline system also results in an unjustified disparity between state court aggravated assault defendants and federally prosecuted Native American aggravated assault defendants. Application of the sentencing factors of 18 U.S.C. §3553(a) to Mr. Roybal supports a deviation from the advisory guidelines.

Mr. Roybal is now 53 years old. He is an enrolled member of the Jicarilla Apache Tribe, living his life in Dulce, New Mexico. Mr. Roybal was abandoned as a child by his alcoholic parents. He and his siblings were raised by his abusive maternal grandmother who verbally and physically abused him until he turned 18 years old. He moved in with his father who had recovered from his alcoholism and supported young Lawrence.

Mr. Roybal's past record is the result of his chronic and severe alcoholism and multiple

diagnosed psychiatric and health problems, including but not limited to: long term major depressive disorder, borderline personality disorder, anxiety disorder, a seizure disorder, post-traumatic stress disorder, a neck injury in 1998, and multiple suicide attempts. *See*, PSR at ¶¶ 55- 70. He currently receives the following medications at the Sandoval County Detention Center - Zoloft (Depression); Risperidone (Bipolar); Cogentin (Anticholinergic); and Buspar (Anti-anxiety). Undersigned counsel obtained a small portion of Mr. Roybal's voluminous health and mental health records from the Department of Behavioral Health, Dulce, New Mexico and will present them to the Court, upon request, to corroborate Mr. Roybal's substantial health and mental health conditions. *See*, PSR at ¶¶ 55 - 65.

Despite his tumultuous childhood, Mr. Roybal strived to maintain positive relationships with his family. ("The defendant's daughter, Valarie, described him as a good father and kind and giving person. She understands her father has struggled with alcoholism most of his life, but she feels he needs treatment, not incarceration. Valarie reported she has fond memories of her father and stated he is a fantastic cook and very sociable, when he is not intoxicated"). PSR at ¶ 51. Prior to and at the time of his arrest on the instant offense, Mr. Roybal was living with and caring for his quadriplegic brother, Howard.

Mr. Roybal was arrested by the Jicarilla Apache Police Department on May 11, 2015 at his residence for the charge of assault with a dangerous weapon.

On May 11, 2015 Mr. Roybal was caring for his disabled brother Howard. Both were drinking. Their sister, Delia Haines reported that she was concerned that Mr. Roybal was intoxicated and he was not to be at his brother Howard's residence. She called police requesting "a welfare check."

The officer approached the residence and announced himself requesting Mr. Roybal open the door for the purpose of checking his welfare. Since he had "bad experiences" with police previously, Mr. Roybal refused to open the door. Both his mother and sister, Delia, called to him to appear. Mr. Roybal just wanted to be left alone. The requests became demands and an

altercation erupted when a second officer and a Jicarilla Apache Game and Fish officer arrived on scene.

Mr. Roybal, frustrated, intoxicated, and angry, asked the officer to shoot him and produced a pitchfork thrusting at the second officer known as John Doe tearing through the sleeve of his shirt. He was arrested and has remained in custody since the date of the incident.

On June 9, 2015 Mr. Roybal was charged in a federal Indictment with Assaulting, Resisting, or Impeding a Federal Officer with a Deadly or Dangerous Weapon in violation of 18 U.S.C. §§ 111(a) and (b). (Doc. 11). Mr. Roybal entered a plea of guilty to the Indictment without benefit of a plea agreement on September 4, 2015. (Doc. 21). The statutory range of punishment for that crime is not more than 20 years imprisonment. 18 U.S.C. § 111(b). Mr. Roybal's scheduled sentencing date is January 4, 2016.

Mr. Roybal acknowledges that he did not handle the situation properly, choosing to "lose it" after a day of binge drinking. He misses his family. His family misses him.

The court should consider the Sentencing Guidelines as a factor in the Section 3553 analysis and as "the starting point and the initial benchmark" in determining Mr. Roybal's sentence. Because the Guidelines for violent crimes were not developed within the confines of the Sentencing Commission's unique empirically-grounded area of expertise, they are not a reliable appraisal of similar sentences in similar courts of general jurisdiction. The court should, therefore, afford less deference than it would to the Commission's empirically-grounded Guidelines.

The Sentencing Commission departed from reliance on previous empirical data on past practices in setting the original base offense levels for violent crimes to address concerns that past sentences for violent crimes were inadequate. The base offense level for Mr. Roybal's crime was later increased to achieve proportionality with Guidelines that were created in response to Congressional concerns about violent internet child pornography and the transportation of minors for sexual exploitation, circumstances that are not present in this case. These actions resulted in

an overstated Guidelines sentencing range.

Also, the Court should not disregard the Sentencing Commission's own admission that the violent crimes Guidelines have a disparate effect on Native Americans. The Sentencing Commission's focus on heightened sentences for violent crimes results in harsher punishments for violent crimes that fall only on Native Americans, since they are generally the only offenders sentenced in federal court for aggravated assault.

In connection with the court's consideration of the need to avoid unwarranted sentencing disparities, the court should note that the crime of assault with a deadly weapon, if committed by a non-Native American outside a reservation, are prosecuted in state court. The Sentencing Commission has expressly found that the Sentencing Guidelines result in longer sentences for Native Americans than they would otherwise receive. The Commission's ad hoc Advisory Group recommended some changes to mitigate the disparity, but those recommendations have not been implemented. Under these circumstances, the court should not conclude that the Commission is basing "its determinations on empirical data and national experience, guided by professional staff with appropriate expertise."

There is no way to compare sentences of Native Americans who commit these crimes to non-Native Americans without reference to state court sentences. There is no principled reason to subject Mr. Roybal to a substantially longer sentence than his state court non-Native American counterpart would serve. Although state court sentences are not ordinarily considered in connection with federal court sentencing, such consideration is necessary when it is the only basis on which to assess the sentencing goal of avoiding disparity. Although there are arguably situations in which the disparate impact on a group of defendants could be justified by legitimate sentencing goals that target the shared characteristics that define the group, such as recidivists, it is hard to imagine that any legitimate sentencing purpose would justify the imposition of significantly higher sentences on Native Americans by reason of their status as Native Americans or their presence on Indian lands.

It might be argued that an extended custodial term is necessary to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense. However, this factor is but one of four to be considered. An extended custodial term is not necessary to deter Lawrence Roybal individually or others who might be similarly situated. Mr. Roybal needs long term residential alcohol treatment to maintain his life, not a long jail sentence.

Mr. Roybal's criminal history and prior offenses are products of his chronic and severe alcoholism. Mr. Roybal is requesting the Court give him a split sentence of imprisonment and community confinement at a long term residential alcohol treatment program. *See*, U.S.S.G. §5F1.1 ("Community confinement generally should not be imposed for a period in excess of six months. A longer period may be imposed to accomplish the objectives of a specific rehabilitative program such as drug rehabilitation").

It is apparent that Lawrence Roybal made an error in judgment when he lashed out at the Jicarilla officer placing him in a position of danger. However, although not a defense, Mr. Roybal's extreme intoxication was a significant factor which created a chain of events resulting in his violent actions.

An alternative to an extended imprisonment term can still achieve the purposes of 18 U.S.C. § 3553(a) without resort to the needless cost of imprisonment for a self-admitted alcoholic. A reasonable period of incarceration and community confinement in a residential alcohol program is an adequate deterrent in this case, and will "protect" the public from any further crimes by Mr. Roybal.

## IV. CONCLUSION

But for prior more severe guideline ranges due to the Sentencing Commission's own initiative or in response to Congressional actions in establishing guideline ranges that were significantly more severe than past practice, Mr. Roybal would race a reduced sentencing guideline range, more consistent with state penalties. The current advisory guidelines result in a sentence greater than necessary to comply with the purposes set forth in 18 U.S.C. §3553(a)(2).

Therefore, the Court should exercise its discretion to vary from the advisory guidelines in this case. Lawrence Roybal's request for a just and reasonable sentence will serve the statutory mission of the Federal Sentencing Guidelines of punishment **and** rehabilitation and will ensure that the provisions of the Federal Sentencing Guidelines will be construed to the ends as defined therein.

        Respectfully submitted,

        **MARTIN LOPEZ, III**
        A Professional Corporation

        *Electronically Filed December 4, 2015*
        Martin Lopez, III
        Attorney for Defendant Roybal
        1500 Mountain Rd. N. W.
        Albuquerque, NM 87104
        Tele: (505) 243-2900

**I HEREBY CERTIFY** that a true
and correct copy was forwarded via
e-mail and electronic notice to Assistant
U. S. Attorney Raquel Ruiz-Velez this
4th day December, 2015.

*Electronically Filed December 4, 2015*
Martin Lopez, III